PRYOR & MANDELUP, LLP
675 OLD COUNTRY ROAD
WESTBURY, NEW YORK 11590

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re:

BARRY OPTICAL LABORATORIES, INC.,

Chapter 11

Case No. 08-75892-ast

Debtor.

------------------------------------------------------------x

### DEBTOR'S APPLICATION FOR ORDER DISBURSING PROCEEDS OF SALE AND DISMISSING CHAPTER 11 CASE

TO: THE HONORABLE ALAN S. TRUST
UNITED STATES BANKRUPTCY JUDGE:

Barry Optical Laboratories, Inc. (the "Debtor"), the Debtor and debtor-in-possession in the above captioned chapter 11 case, by its attorneys, Pryor & Mandelup, L.L.P., as its application for entry of an order disbursing Debtor's remaining assets and, pursuant to 11 U.S.C. § 1112(b), dismissing the above captioned chapter 11 bankruptcy case, respectfully represents:

### BACKGROUND

1. On October 23, 2008 (the "Filing Date"), the Debtor filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York, and an order for relief was simultaneously entered.

2. Since the Filing Date, the Debtor has continued in operation of its business and in possession of its property as a debtor-in-possession, pursuant to 11 U.S.C. §§ 1107 and 1108.

3. No Trustee or examiner has been appointed in this case, nor has any official committee of creditors been formed.

4. By Order of this Court, dated November 10, 2009, the sale of Debtor's assets to Barry Optical Group, LLC (the "Purchaser"), pursuant to a Purchase and Sale Agreement, dated August 25, 2009, was approved. On or about November 27, 2009, the sale of the Debtors assets to the Purchaser was closed (the "Closing"). The sale price for the assets was, in light of a twenty five percent (25%) decline in the Debtor's accounts receivable, eighty-seven thousand seven hundred and two dollars and ninety seven cents ($87,702.97), which included sixty-two thousand seven hundred and two dollars and ninety seven cents ($62,702.97) for the Debtor's accounts receivable and twenty-five thousand dollars ($25,000) for the Debtor's machinery and equipment. The Debtor received a net amount of fifty-one thousand nine hundred fifty-one dollars and thirty-six cents ($51,951.36) at the closing, as the Purchaser was entitled to a credit towards the purchase price for funds advanced to the Debtor as a debtor-in-possession loan, pursuant to the Orders of the Court, dated August 31, 2009 and September 30, 2009, approving such debtor-in-possession financing.

5. As of the Closing, Debtor's business has not operated. There is a balance of fifty-one thousand nine hundred fifty-one dollars and thirty six cents ($51,951.36) which it is hereby requested be disbursed to the various creditors holding administrative claims against the Debtor's bankruptcy estate. This amount is insufficient for the purposes of paying even administrative claims in full and, as such, there will be no distribution to creditors not holding an administrative claim against the Debtor's bankruptcy estate.

6. As of the date hereof, the following entities have administrative claims, pursuant to 11 U.S.C. § 503: (i) the Office of the United States Trustee for quarterly fees in the amount of $10,725.00 (attached hereto as **"Exhibit A"** is a statement of fees owed to the Office of the United States Trustee); (ii) Weindorf, Wightman & Co. ("WW&C") in the amount of $8,100.00 for professional services rendered to the Debtor; (iii) Pryor & Mandelup, L.L.P. ("P&M") in the amount of $74,778.44 for professional services rendered to the Debtor and out-of-pocket expenses paid on Debtor's behalf; (iv) Jacqueline Baraban, an employee of the Debtor's, for post-petition wages in the amount of $9,343.95 (annexed hereto as **"Exhibit B"** are copies of payroll checks that were issued to the claimant but were not deposited); (v) Jeffrey Baraban, the President of the Debtor, for unpaid post-petition wages in the amount of $14,681.07 (annexed hereto as **"Exhibit C"** are copies of payroll checks that were issued to the claimant but were not deposited); and, (vi) 200 Dixon Property, LLC (the "Landlord"), the Debtor's Landlord as to the premises located at 200-B Dixon Avenue, Amityville, New York 11701, in the amount of $37,725.95, representing unpaid post-petition rent for the months of August through November 2009, partial rent for December 2009 and the Purchaser's use and occupancy for January 2010.

7. Jeffrey Baraban's administrative claim, however, exceeds that which he is entitled to and, as such, must be reduced accordingly. Jeffrey Baraban's Affidavit pursuant to E.D.N.Y. LBR 1007-4, dated November 11, 2008 (the "Baraban Affidavit"), states that the Debtor would pay him weekly compensation of $2,200.00 following the Filing Date. As such, he is not entitled to any more than $2,200.00 for each week of post-petition wages for which he was not paid. Mr. Baraban has submitted copies of the checks that were not deposited, which purportedly give rise to his

administrative expense. According to these checks, annexed hereto as **Exhibit "C"**, Mr. Baraban did not receive his salary for the following weeks: September 10, 2009 to September 16, 2009; September 17, 2009 to September 23, 2009; November 4, 2009 to November 18, 2009. Mr. Baraban has submitted two (2) checks in part covering the same period, one for a period beginning on November 4, 2009 to November 18, 2009 in an amount of $5,263.95, and the second for the period of November 5, 2009 to November 11, 2009 in the amount of $7,018.60. It appears based on these records that Mr. Baraban was claiming a salary in excess of that set forth in the Baraban Affidavit. As it seems that Mr. Baraban was not paid for only four (4) weeks of post-petition wages, his administrative claim is properly fixed at no more than $8,800.00.

8. Additionally, Jacqueline Baraban's administrative claim for unpaid post-petition must also be reduced. According to the Debtor's pay statements annexed hereto as **Exhibit "B"**, Jacqueline Baraban is claiming $9,343.95 in unpaid post-petition wages. However, as these pay statements will demonstrate the first five (5) of these pay statements show that Mrs. Baraban's net weekly salary was $705.18 up until at least September 28, 2009. However, the two (2) final pay statements show a remarkable increase in her salary. One statement, covering the period from November 5, 2009 to November 11, 2009 indicates that her net weekly salary increased dramatically to $3,324.60, while another statement, for the period November 4, 2009 to November 18, 2009, which actually encompasses the pay period of the former check, shows that her net weekly salary was approximately $1,246.73. Jacqueline Baraban's dramatically increased salary and the fact that the two checks partially covering the same pay period renders her administrative claim particularly suspect especially given that the Court had already approved the sale of substantially all of the Debtor's assets

by the time these checks were issued. Consequently, Jacqueline Baraban is entitled to an administrative claim for unpaid post-petition wages in the amount of $4,936.26, which represents her original net weekly salary of $705.18 for the seven (7) weeks she went without her salary according to the Debtor's pay statements.

9. The Debtor proposes to pay the United States Trustee's administrative claim of $10,725.00 in full and then all remaining administrative claim holders will share in the remaining $41,226.36, in *pari passu*, pursuant to 11 U.S.C. § 507. As such, the Debtor hereby proposes to distribute the following amounts: (i) $10,725 to the Office of the United States Trustee; (ii) $22,946.59 to P&M; (iii) $2,485.95 to WW&C; (iv) $11,576.36 to the Landlord; (v) $2,700.33 to Jeffrey Baraban; and, (vi) $1,517.13 to Jacqueline Baraban.

## RELIEF REQUESTED

10. Debtor seeks dismissal of this case because it would be unable to effectuate a plan of reorganization and because no purpose would be served in converting this case to a case under Chapter 7 of the Bankruptcy Code. All of Debtor's assets have been liquidated and the proceeds will be utilized, as set forth above, to pay the United States Trustee's quarterly fees, Chapter 11 professionals and other administrative claim holders in *pari passu*, pursuant to 11 U.S.C. § 507.

11. 11 U.S.C. § 1112(b)(1) provides, irrelevant part, as follows:

> Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert the case

under this chapter to a case under chapter 7 or dismiss
a case under this chapter, whichever is in the best
interests of creditors and the estate, if the movant
establishes cause.

12. Furthermore, 11 U.S.C. § 1112(b)(4) provides that there are a number of factors that provide cause for the purposes of a motion to dismiss which includes, but is not limited to, a substantial or continuing loss to or diminution and the absence of a reasonable likelihood of rehabilitation.

13. Where a Debtor does not have a reasonable amount of assets or cannot feasibly operate its business, it is logical to dismiss the case. *In re 312 West 91st Street Co., Inc.*, 35 B.R. 346, 347 (Bankr. S.D.N.Y. 1983). Here, Debtor has no remaining assets, no remaining business, and no ability to effectuate a plan of reorganization. As such, there is no likelihood of rehabilitation and allowing the case to proceed the case proceed would result in a continuing loss to the Debtor's Estate as administrative claims continued to accrue. Accordingly, sufficient cause exists for dismissing the instant Chapter 11 case pursuant to § 1112(b).

14. The Court, pursuant to § 1112(b), has wide discretion in deciding whether or not to dismiss the case or convert it under a chapter 7. *In re Larmar Estates, Inc.*, 6 B.R. 933, 937 (Bankr. E.D.N.Y. 1980). The determining factor as to whether to convert or dismiss a case is whatever option is in the best interests of creditors and the estate. *Id.* It has been recognized that where, as here, there are few, if any, assets, to administer, dismissal, rather than conversion to a case under chapter 7 is appropriate. *In re Motor Works, Inc.*, 85 B.R. 661, 662 (Bankr. S.D.Ga. 1988). Dismissal of this case is appropriate since it would serve no useful purpose to convert this case to

Chapter 7 as there are no unencumbered assets that could be liquidated for the benefit of priority and general unsecured creditors, other than the funds that the Debtor seeks to distribute by the instant motion.

15. Conversion of this case to one under Chapter 7 would serve no useful purpose for unsecured creditors as there are no substantial assets for a Chapter 7 Trustee to administer. Accordingly, it is in the best interests of Debtor, the Debtor's Estate, and the Debtor's creditors for this case to be dismissed.

## NOTICE

16. The Debtor has served the pre-fixed notice of motion and this application on all creditors, all parties filing notices of appearance, the Office of the United States Trustee, counsel for the Debtor's Landlord, Jacqueline Baraban and Jeffrey Baraban. Debtor requests that this Court determine such service to be sufficient pursuant to Bankruptcy Rule 2002(a)(4).

## NO PRIOR REQUEST FOR RELIEF

17. There has been no prior request for relief sought herein.

## CONCLUSION

18. The Debtor has demonstrated the justifiable basis for the distribution of Debtor's proceeds herein. Additionally, the facts set forth above clearly indicate that the Debtor has demonstrated sufficient cause to justify dismissal of this voluntary Chapter 11 case. As there are no unencumbered assets for a Chapter 7 Trustee to administer, other than the funds sought to be distributed to the various administrative claimants by this motion, there would be no benefit to unsecured creditors to a conversion of this case to one under Chapter 7.

**WHEREFORE,** the Debtor respectfully requests the entry of an order; (i) authorizing the Debtor's counsel to disburse the remaining Estate assets as follows: (a) $10,725 to the Office of the United States Trustee; (b) $22,946.59 to P&M; (c) $2,485.95 to WW&C; (d) $11,576.36 to the Landlord; (e) $2,700.33 to Jeffrey Baraban; and, (f) $1,517.13 to Jacqueline Baraban; (ii) pursuant to 11 U.S.C. § 1112(b), dismissing the above-captioned Chapter 11 case; and (iii) granting such other and further relief as this court deems just and proper.

Dated: Westbury, New York　　　　　　　　　Pryor & Mandelup, LLP
　　　　March 2, 2010　　　　　　　　　　　　Attorneys for Debtors


　　　　　　　　　　　　　　　　　　By:　　*/s/ J. Logan Rappaport*
　　　　　　　　　　　　　　　　　　　　　　J. Logan Rappaport
　　　　　　　　　　　　　　　　　　　　　　675 Old Country Road
　　　　　　　　　　　　　　　　　　　　　　Westbury, New York 11590
　　　　　　　　　　　　　　　　　　　　　　(516) 997-0999